ROBERSON v. WITHERS.

(Court of Civil Appeals of Texas.   Texarkana.
Jan. 9, 1913.)

1. SALES (§ 481*)—CONDITIONAL SALES—CON-
VERSION BY SELLER.

Where a seller retaining title until the
price is paid, with the right of resuming pos-
session on the buyer's failure to pay any of the
installments at maturity, assumes control of
the goods and rents them to third persons be-
fore default in the payment of any installment
of the price, his act is a conversion, unless the
buyer authorizes it.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 1095; Dec. Dig. § 481.*]

2. LIMITATION OF ACTIONS (§ 55*)—TROVER—
ACCRUAL OF CAUSE OF ACTION.

Where a buyer, in a contract stipulating
that the seller should retain title until the price
was paid and could resume possession on the
nonpayment of any of the installments at ma-
turity, did not consent to the act of the seller
assuming control of the goods and renting them
to third persons before any installment was
due, the cause of action for the conversion of
the goods by the seller accrued at that time;
and an action not brought within two years
thereafter was barred by limitations.

[Ed. Note.—For other cases, see Limitation of
Actions, Cent. Dig. §§ 299–306; Dec. Dig. §
55.*]

Appeal from District Court, Tarrant Coun-
ty; Jas. W. Swayne, Judge.

Action by Mrs. V. F. Withers against R. J.
Roberson.   From a judgment for plaintiff,
defendant appeals.   Reversed and rendered.

Lattimore, Cummings, Doyle & Bouldin, of
Ft. Worth, for appellant.   Harris, Harris &
Young, of Ft. Worth, for appellee.

WILLSON, C. J.   The suit resulting in the
judgment from which this appeal is prose-
cuted was commenced by appellee against
Fleming & Roberson, alleged to be a copart-
nership composed of Lee Fleming and A. C.
Roberson, by a petition filed September 15,
1908.   It was to recover $950, as the market
value of certain furniture owned by ap-
pellee, which she alleged said Fleming &
Roberson had unlawfully converted to their
own use August 1, 1908, and $50 per month
after said August 1, as the rental value of
the furniture.   In an amended petition filed
October 30, 1910, appellee alleged that ap-
pellant was a member of the firm of Fleming
& Roberson, and made him a party defend-
ant in the suit.   The case was tried on an
amended petition filed November 8, 1911, in
which appellee alleged that the conversion
she complained of occurred January 1, 1909.
In a plea duly sworn to appellant denied
that he was ever a member of the firm of
Fleming & Roberson; and in his answer,
among other things, pleaded that appellee's
cause of action against him accrued more
than two years before she made him a party
to her suit, and therefore was barred by the
statute of limitations.   The court instructed
the jury to find in favor of the firm of Flem-
ing & Roberson, and no complaint is made

of the judgment rendered in favor of said
firm in accordance with such a verdict.   On
issues, as submitted by the court, between
appellant and appellee, the jury found in
favor of the latter; and in accordance with
their finding judgment for the sum of $400
was rendered in appellee's favor against ap-
pellant.

[1, 2]   It appeared from the testimony that
appellant was never a member of the firm of
Fleming & Roberson.   It further appeared
that he had leased a rooming house in Ft.
Worth until January 1, 1909, and owned a
lot of furniture in the house.   He sublet the
house to one Farley, and sold him the furni-
ture.   Farley was to pay $700 for the furni-
ture in installments of $25 each.   The trans-
action was evidenced by a written instrument
containing a stipulation that the furniture
was to remain the property of appellant un-
til the purchase price thereof was paid.
January 14, 1908, when there was a balance
unpaid of $588.95 of the sum Farley had
agreed to pay for the furniture, he sold same
to appellee, who, as a part of the consid-
eration therefor, undertook to pay appellant
said balance of $588.95 due from Farley.
Thereupon, it seems, the contract between
appellant and Farley was canceled, and in
lieu of it one between appellant and appellee
was entered into, whereby the former sold
the furniture to the latter for $588.95, pay-
able in monthly installments of $25 each.
This transaction also was evidenced by a
written instrument, in which it was stipulat-
ed that the furniture was to remain the
property of appellant until the $588.95 was
paid; that until paid for it should not be
removed from the rooming house; and that
appellant might resume possession thereof in
the event appellee failed to pay any one of
the installments when it became due.   At
the time she purchased the furniture, ap-
pellee rented the rooming house from ap-
pellant, and then subrented it, furnished, to
other parties until July, 1908, when she noti-
fied appellant that she did not wish to rent
the house any longer and desired to remove
the furniture to other houses controlled by
her.   Appellant, however, refused to permit
her to remove the furniture, and at once
rented the house and the furniture to other
parties.   As none of the installments of the
purchase money was then due, appellant's
act in assuming control of the furniture and
renting it to other parties was not author-
ized by the contract whereby he sold the
furniture to appellee, and therefore was un-
lawful and a conversion of the furniture,
unless authorized by appellee in some oth-
er way.   If the act amounted to a conver-
sion, appellee's cause of action accrued then;
and more than two years having elapsed
thereafter before she commenced her suit
against appellant her right to maintain same
against him had become barred.   The ques-
tion on the issue of limitation therefore was,

Did it appear that appellee had consented to appellant's act in renting the furniture to other parties in July, 1908? In her petition she alleged that appellant took possession of the furniture in July, 1908, under an agreement with her to pay her rent for same until January, 1909. Had she offered testimony in support of this allegation, the judgment might be sustained. But there was no such testimony. On the contrary, appellee, as a witness, emphatically denied the existence of such an agreement, as is shown by portions of her testimony, as follows: "There was no agreement made between myself and Mr. R. J. Roberson in July, 1908, that he was to take my furniture and keep it there in this rooming house and rent it, and if he could make anything over and above expenses he was to pay it to me. I never made any agreement with him to do that. I did not testify yesterday that I did. It was a proposition that he made to me, but there was no agreement on it. I did, not testify to Judge Harris on direct examination, and also to you on cross-examination, that that was the arrangement between us. There wasn't any arrangement. We never came to terms in any way. He would not come to any of my propositions, and I would not come to his. I did not swear yesterday before this very jury, sitting here in the box, that I agreed with him to leave that furniture there, and he was to keep it and rent it and if he could make anything out of it over and above expenses he was to pay it to me; that was a proposition that he made, but I never did accept it. I did not swear on direct examination to Judge Harris, and on cross-examination to you, that that was the arrangement under which I left the furniture there. I turned the building back to him, but I never did turn my furniture over to him. There was never any agreement about the furniture. * * * It is not a fact that I rented him the furniture in there at the time I moved out. He made a proposition to me to take it back, but I did not accept it. I did not agree to it in any manner, shape, way, or form. * * * I am not suing him on a contract, claiming that I did rent it to him. * * * I did not turn the property over for him to keep possession of until the 1st of January, 1909. He took it without my consent, and said he would get as much out of it there as anywhere else: I did not agree to that. He had it against my wishes and without my consent and over my protest from the 15th of July, 1908. I was not willing for him to keep the furniture at all. I wanted him to turn it back to me. I never consented for him to keep this furniture one single minute and pay me rent for it. That was the reason I brought this suit. I don't remember the date of the suit. I brought suit because he would not turn over to me my furniture so I could rent it to other people." From this testimony it is obvious that the conversion of the furniture by appellant occurred in July, 1908, and that appellee's cause of action therefor was barred in October, 1910, when she commenced her suit against appellant. The judgment should have been for appellant. It will be reversed, and judgment will be here rendered that appellee take nothing by her suit.